# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

UNITED STATES OF AMERICA,

      Plaintiff/Respondent,

vs.

VINCENTE OSORIO,

      Defendant/Petitioner

)
)
)
)
)
)
)
)
)
)
)
)
)
)

NO. 2:14-CR-48
(NO. 2:16-cv-90)

## OPINION AND ORDER

This matter is before the Court on the Motion to Vacate under 28 U.S.C. § 2255 (DE #113), the Motion Requesting a Hearing and Appointment of Constitutional Counsel (DE #115), the Motion Requesting Discovery and to Submit Newly Discovered Evidence in Support of His Claims of Inadequate and Ineffective Assistance of Counseling with Request to Expand the Record (DE #116), and Motion to Expand the Record with Newly Discovered Evidence in Support of Claims of Inadequate and Ineffective Assistance of Counseling (DE #117) filed by defendant Vincente Osorio ("Osorio") on March 11, 2016; and the Motion for Leave to Amend 28 U.S.C. § 2255 Motion,

1

filed by Osorio on February 20, 2017 (#124). For the reasons set forth below, the motion to vacate under section 2255 (DE #113) is **DENIED**; the motion requesting a hearing and appointment of counsel (DE #115) is **DENIED**; the motion requesting discovery (DE #116) is **DENIED**; and the motion to expand the record (DE #117) is **DENIED**; and the motion to amend the Section 2255 motion (DE #124) is **DENIED.** The Clerk is **ORDERED** to **DISMISS** this case **WITH PREJUDICE.** Further, this Court declines to issue Defendant a certificate of appealability. The Clerk is **ORDERED** to distribute a copy of this order to Vincente Osorio, #13699-027, Ashland FPC Federal Prison Camp, P.O. Box 6000, Ashland, KY 41105, or to such other more current address that may be on file for the defendant.

<u>BACKGROUND</u>

Vincente Osorio ("Osorio") was charged with conspiring to possess with intent to distribute cocaine and attempting and aiding and abetting the attempt to possess with intent to distribute five kilograms or more of cocaine. 21 U.S.C. § 846, 18 U.S.C. § 2. Osorio proceeded to trial. On the second day of trial, Osorio pled guilty to both counts of the Indictment without a plea agreement. At his sentencing on April 29, 2015, Osorio's counsel requested the statutory minimum of 120 months imprisonment, and the Government agreed with this request. (DE #111 at 74, 77.)

The Court sentenced Osorio to the statutory minimum of 120 months imprisonment. (*Id.* at 80.) Osorio did not file an appeal.

On March 11, 2016, Osorio filed the instant motion under section 2255, as well as several other related motions, while proceeding *pro se*. (DE ##113, 115, 116, 117.) The Government filed an omnibus reply brief responding to all of Osorio's motions on May 13, 2016. Osorio filed an omnibus reply brief on June 9, 2016. On February 20, 2017, Osorio filed a motion for leave to amend his 2255 motion, indicating that he had retained counsel and requested that the Court consider an argument raised in his Section 2255 motion, but the Government had not addressed in its response brief. (DE #124.) Upon the Court's order, the Government responded to the motion for leave to amend the Section 2255 motion on February 8, 2018. Osorio filed a reply to his motion for leave to amend on March 1, 2018. The motions are now fully briefed and ripe for adjudication.

DISCUSSION

In assessing Osorio's *pro se* motions, the Court is mindful of the well-settled principle that, when interpreting a *pro se* petitioner's complaint or section 2255 motion, district courts have a "special responsibility" to construe such pleadings liberally. *Donald v. Cook Cnty. Sheriff's Dep't,* 95 F.3d 548, 555 (7th Cir. 1996); *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976)

("a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers") (citation and internal quotation marks omitted).  In other words:

> The mandated liberal construction afforded to *pro se* pleadings "means that if the court can reasonably read the pleadings to state a valid claim on which the [petitioner] could prevail, it should do so despite the [petitioner's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."

*Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999) (habeas petition from state court conviction) (alterations in original; citation omitted).  On the other hand, "a district court should not assume the role of advocate for the *pro se* litigant and may not rewrite a petition to include claims that were never presented." *Id.* (citation and internal quotation marks omitted). The Court assesses Osorio's claims with these guidelines in mind.

<u>Section 2255 Motion</u>

Habeas corpus relief under 28 U.S.C. § 2255 is reserved for "extraordinary situations." *Prewitt v. United States,* 83 F.3d 812, 816 (7th Cir. 1996) (citation omitted).  In order to proceed on a habeas corpus motion pursuant to 28 U.S.C. § 2255, a federal prisoner must show that "the district court sentenced him in violation of the Constitution or laws of the United States or that the sentence was in excess of the maximum authorized by law or is

otherwise subject to collateral attack." *Id*. (citation omitted).

A section 2255 motion is neither a substitute for nor recapitulation of a direct appeal. *See id.; Belford v. United States,* 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds, Castellanos v. United States,* 26 F.3d 717 (7th Cir. 1994). As a result:

> [T]here are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

*Belford*, 975 F.2d at 313 (citations omitted). Additionally, aside from demonstrating "cause" and "prejudice" from the failure to raise constitutional errors on direct appeal, a section 2255 petitioner may alternatively pursue such errors after demonstrating "that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice." *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996) (citations omitted).

<u>Ineffective Assistance of Counsel</u>

Osorio's claims are based on the alleged ineffective assistance of his former counsel. Claims of ineffective assistance of counsel are governed by the two-pronged test set

forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Hardamon v. United States*, 319 F.3d 943, 948-49 (7th Cir. 2003). To prevail on an ineffective assistance of counsel claim, Osorio must first show that his attorney's conduct "fell below an objective standard of reasonableness" and was "outside the wide range of professionally competent assistance." *Barker v. United States,* 7 F.3d 629, 633 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 688, 690). The second *Strickland* prong requires Osorio to show prejudice. *Strickland*, 466 U.S. at 694. If one prong is not satisfied, it is unnecessary to reach the merits of the second prong. *Id*. at 697.

Regarding the deficient-performance prong, the petitioner must establish specific acts or omissions that fell below professional norms. *Id*. at 690. Great deference is given to counsel's performance; the petitioner has a heavy burden to overcome the strong presumption of effective performance. *See id.* at 690; *Coleman v. United States*, 318 F.3d 754, 758 (7th Cir. 2003). Trial counsel "is entitled to a 'strong presumption' that his performance fell 'within the wide range of reasonable professional assistance' and will not be judged with the benefit of hindsight.'" *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (quoting *Strickland*, 466 U.S. at 689). "Courts are admonished not to become 'Monday morning quarterback[s]' in

evaluating counsel's performance." *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013) (quotation omitted).

In the context of guilty pleas challenged on the grounds of ineffective assistance of counsel, the prejudice prong of *Strickland* analysis requires the defendant to establish "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *St. Pierre v. Walls*, 297 F.3d 617, 628 (7th Cir. 2002) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985)). The petitioner must proffer "objective evidence that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011) (citations omitted). Counsel's deficient performance must have been "a decisive factor" in the petitioner's decision to enter a guilty plea. *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009) (citation omitted).

<u>Failure to File Pretrial Motions</u>

Osorio argues that his trial counsel was ineffective because counsel failed to file motions for pretrial discovery from the Government. Osorio refers to a list of pretrial motions from the "BOP Law Computer Criminal Defense Techniques" that he maintains should have been filed on his behalf. (DE #115 at 6-7.) These motions request that the Government provide discovery required

under Rule 16 of the Federal Rules of Criminal Procedure. However, on June 3, 2014, the Court issued an order in connection with Osorio's arraignment containing provisions for pretrial discovery.[1] (*See* DE #26); N.D. Ind. L. Cr. R. 16-1(b). Osorio does not proffer any evidence that the Government failed to comply with the Court's order. Rather, the record reflects that the Government provided Osorio's counsel with documents. (*See* DE #117 at 4-41 (documents Bates labeled "US v Osorio," indicating that they were produced by the Government in connection with Osorio's criminal proceeding).) Thus, the filing of routine discovery motions would have been redundant. Moreover, "a petitioner alleging that counsel's ineffectiveness was centered on a supposed failure to investigate has the burden of providing the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." *Hardamon,* 319 F.3d at 951 (citation and internal quotation marks omitted). Osorio does not assert what evidence his trial counsel would have

---

[1] The order provided that the Government shall permit Osorio's counsel to inspect or copy: (1) any written or recorded statements or confessions made by the Defendant, or copies thereof, within the possession, custody, or control of the Government; (2) any relevant results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the case, or copies thereof, within the possession, custody, or control of the Government; (3) any relevant recorded testimony of the Defendant before a grand jury; (4) books, papers, documents, data, photographs, tangible objects, buildings or places which are within the possession, custody, or control of the Government as provided in Rule 16(a)(1)(E); (5) the Federal Bureau of Investigation Identification Sheet indicating the Defendant's prior criminal record; and (6) any exculpatory or mitigating evidence. (DE #26 at 1-2.)

found if he had filed the discovery motions, or how such evidence would have caused him to not plead guilty, and instead, proceed to trial.

Aside from the discovery motions, Osorio asserts that his trial counsel failed to file a motion to proceed by indictment within 30 days of filing the complaint. The record demonstrates that the Complaint was filed on April 30, 2014 (DE #1), and that Osorio was indicted on May 22, 2014 (DE #19). Because Osorio was indicted within the 30-day requirement, any motion as to this issue would have been frivolous.

Osorio also contends that his trial counsel should have filed a motion for a speedy trial. The Speedy Trial Act ("Act") requires criminal trials to commence within 70 days of the indictment or the defendant's initial appearance, whichever is later. 18 U.S.C. § 3161(c)(1). The Act recognizes that certain delays are justifiable and permits this time to be excluded from the 70-day clock. *See* 18 U.S.C. § 3161(h). Here, Osorio's arraignment was on June 3, 2014 (DE #26), and his trial began on August 25, 2014 (DE #62), a difference of 83 days. At the arraignment, the parties agreed and the Court ruled that the 28 days to be used to prepare and file pre-trial motions would be excluded when calculating the time period for a speedy trial. (DE #26; *id*. at 2.) Thus, there were 55 non-excludable days between Osorio's arraignment and the

start of his trial. Because Osorio's trial began before the speedy trial time limit, his counsel was not deficient for failing to file such motion.

Osorio asserts that his trial counsel failed to file defensive pretrial motions challenging jurisdiction, extradition, and use of "sham-cocaine" to rob him in an entrapment scam. The merits of these and other arguments are addressed below.

### Failure to Raise Issue of Jurisdiction and/or Improper Extradition from Illinois

Citing *Adams v. United States*, 319 U.S. 312 (1943), Osorio argues that he was not properly extradited from the State of Illinois to Indiana and that no jurisdiction was authorized. (DE #113, DE #122.) In *Adams,* the Supreme Court was asked to determine the narrow issue of whether there was jurisdiction for the trial of three soldiers accused of raping a civilian woman on a military base. *Id*. at 312. Because Osorio was not convicted of a maritime crime nor did he commit his offense on a military base, his reliance on *Adams* is misplaced. *See Moose v. Krueger,* No. 1:16-CV-01403-JBM, 2016 WL 7391513, at *4 (C.D. Ill. Dec. 21, 2016) (collecting cases that distinguish the narrow holding in *Adams*); *Taylor v. United States*, Nos. 1:09-cv-24, 2009 WL 1874071 (E.D. Tenn. June 29, 2009) ("*Adams* has no applicability to the instant case involving an indictment for a federal offense which occurred in the State").

Osorio asserts that state governors were required to submit extradition records in order to extradite him from Illinois for trial in Indiana.[2]  The Court disagrees.  District courts have original jurisdiction over "all offenses against the laws of the United States."  18 U.S.C. § 3231.  The federal government retains the authority to create and punish federal criminal offenses as "necessary and proper" to the execution of Congress's enumerated powers.  *See United States v. Comstock,* 560 U.S. 126, 135–36 (2010).  As such, "a person in the United States is subject to the jurisdiction of both the federal government and the state government, where the individual is located.  Likewise, an individual is subject to the criminal laws of both." *Moore v. Krueger*, No. 3:16-CV-03295-JBM, 2017 WL 3185843, at *4 (C.D. Ill. July 26, 2017).  "The consent of a state governor is not required to prosecute someone for a federal offense." *Id.*

The record reflects that Osorio voluntarily traveled from Illinois to Indiana with $125,000 for the purpose of purchasing cocaine, and was arrested for federal crimes within the Northern District of Indiana.  (*See* DE #120 at 28-33, 38-41.)  Thus, there was jurisdiction over Osorio when he was arrested.  While Osorio

---

[2] In connection with this Section 2255 motion, Osorio's family filed evidence of their letter to the Governor of Illinois requesting that he investigate why Osorio was prosecuted in Indiana without having been extradited.  (DE #119.) The Governor of Illinois responded that the issue was "outside the jurisdiction of the Office of the Governor."  (DE #119-1.)

claims he was tricked into traveling to Indiana, he proffers no evidence that he was taken there against his will. Therefore, his jurisdiction/extradition argument is meritless.

### Failure to Raise Entrapment Defense

Osorio contends that his trial counsel was ineffective for failing to challenge the entrapment actions of the Government. Osorio maintains that he could not accept responsibility for the crimes because the Government's informant introduced the sham cocaine. To prove entrapment, a defendant must show both "that the government induced him to perform the crime," and "that he was not predisposed to engage in criminal conduct." *See United States v. Bek*, 493 F.3d 790, 800 (7th Cir. 2007) (citing *United States v. Haddad*, 462 F.3d 783, 790 (7th Cir. 2006)). The inducement must be "extraordinary," "the sort of promise that would blind the ordinary person to his legal duties." *Haddad*, 462 F.3d at 790 (citation omitted). When "a person takes advantage of a simple, ordinary opportunity to commit a crime," he is not entrapped. *Id*. The Seventh Circuit explained:

> We hold that inducement means more than mere government solicitation of the crime; the fact that government agents initiated contact with the defendant, suggested the crime, or furnished the ordinary opportunity to commit it is insufficient to show inducement. Instead, inducement means government solicitation of the crime plus some other government conduct that creates a risk that a person who would not commit the crime if left to his own devices will do so in response to the government's efforts. The "other conduct" may be

repeated attempts at persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward beyond that inherent in the customary execution of the crime, pleas based on need, sympathy, or friendship, or any other conduct by government agents that creates a risk that a person who otherwise would not commit the crime if left alone will do so in response to the government's efforts.

*United States v. Mayfield*, 771 F.3d 417, 434-35 (7th Cir. 2014).

Here, Osorio does not point to any "other conduct" by government agents that created a risk that a person who otherwise would not commit the crime if left alone would do so in response to the Government's efforts. Because an entrapment defense had no chance of success under these circumstances, Osorio's counsel was not ineffective for failing to assert it.

Failure to Challenge Warrantless Seizure of $125,000

Osorio assets that his trial counsel should have challenged the warrantless seizure of $125,000 and his vehicle. The record reflects that Osorio gave $125,000 to undercover officers in exchange for what he believed to be ten kilograms of cocaine, and that Osorio agreed to the forfeiture of the $125,000 and the vehicle as part of his change of plea. (DE #120 at 44-45.) Section 2255 claims based on the forfeiture of property "are not cognizable under [Section] 2255, which, by its plain language, is limited to issues of custody and liberty." *Duncan v. United States*, No. 09-CV-0900-MJR, 2010 WL 3038717, at *10 (S.D. Ill. Aug. 3, 2010) (citing *Virsnieks v. Smith*, 521 F.3d 707, 721 (7th

13

Cir. 2008) (refusing to address merits of habeas petitioner's ineffective assistance of counsel claim relating to his fine, recognizing that "permitting habeas petitioners who proceed under section 2255 to bring non-cognizable claims could result in incongruent access to federal habeas review")). Section 2255 does not authorize a federal court to grant habeas corpus relief from monetary penalties in the form of forfeiture of property. *Id*. (citing *United States v. Ramsey,* 106 F.3d 404, 1997 WL 14152, at *1 (7th Cir. 1997) (unpublished opinion)). Moreover, Osorio does not proffer any evidence that, but for his trial counsel's failure to challenge the allegedly warrantless seizures of the funds and vehicle errors, he would not have pleaded guilty and would have insisted on going to trial. For these reasons, this claim is unavailing.

Failure to Challenge Credibility of Government's Confidential Informants

Osorio argues that his counsel should have challenged the credibility of the Government's confidential informants. *See* Fed. R. Evid. 608. The Government notes that Osorio's counsel had no opportunity to challenge any of the confidential informants prior to trial. (DE #121 at 19.) To do so, Osorio would have had to proceed through the adversarial process of the trial. Because Osorio chose to plead guilty on the second day of trial, his counsel did not have an opportunity to challenge the credibility

14

of any informants the Government may have called at trial. (*See* DE #120 at 24-25 (acknowledging Osorio's right to a trial and to have witnesses cross-examined in his defense, and agreeing to waive these rights by pleading guilty).) "Moreover, a counsel's failure to challenge a witness's credibility, in and of itself, does not satisfy the prejudice prong in *Strickland*." *Beard v. United States*, No. 12-CR-30144-DRH, 2016 WL 6071775, at *4 (S.D. Ill. Oct. 17, 2016), *reconsideration denied*, No. 12-CR-30144-DRH, 2018 WL 2064896 (S.D. Ill. May 3, 2018) (citing *Spreitzer v. Peters*, 114 F.3d 1435, 1455 (7th Cir. 1997) (noting that counsel's failure to challenge a witness's credibility, without more, is insufficient to establish the requisite prejudice)). Osorio does not proffer any evidence that, but for his counsel's failure to challenge the credibility of the Government's confidential informants, he would not have pleaded guilty and would have insisted on going to trial. As such, this claim fails.

<u>Innocence as to Conspiracy with Government Agents or Informants</u>

Osorio maintains that he cannot be found guilty of conspiring with Government agents or confidential informants. While this is true, Osorio was charged with conspiring with his co-defendant Manuel Gomez de Dios, as well as other unindicted co-defendants. When Osorio entered his guilty plea, he admitted that he entered into an agreement with Manuel Gomez de Dios and co-conspirator

"Pedro" to obtain five kilos of cocaine. (DE #120 at 28-32, 38-41.) Nothing in the record indicates that either Gomez de Dios or Pedro were Government agents or informants. Because there is no indication that Osorio's conviction is based on agreements with a Government agent or confidential informant, this argument is without merit.

Innocence as to Conspiracy and Attempt to Distribute Cocaine

Osorio also asserts that he cannot have been found guilty of the charges because he never purchased or sold any actual drugs, but rather, sham cocaine. This argument is meritless. Osorio was not charged with purchasing or selling cocaine; rather, he was charged and pled guilty to conspiring to possess with intent to distribute cocaine, and an attempt and aiding and abetting the attempt to possess with intent to distribute cocaine. (*See* DE #120 at 25-26.) There is "no requirement that any real cocaine actually exist to establish this offense a violation of conspiracy to possess cocaine with intent to distribute in violation of [21 U.S.C.] § 846." *United States v. Flournoy*, No. 12 CR 50044, 2013 WL 12216552, at *3 (N.D. Ill. Dec. 16, 2013), *aff'd,* 842 F.3d 524 (7th Cir. 2016) (citing Pattern Criminal Jury Instructions of the Seventh Circuit, 508(A)-510 (2012 ed.)). The same is true with respect to the attempt charge. *See id.* (citing *United States v. Cote,* 504 F.3d 682, 687 (7th Cir. 2007) ("[F]actual impossibility

or mistake of fact is not a defense to an attempt charge."), *United States v. Cotts*, 14 F.3d 300, 307 (7th Cir. 1994) ("Futile attempts because of factual impossibility are attempts still the same.")). Thus, the fact that Osorio could not have actually purchased or sold any cocaine is irrelevant to his convictions.

<u>Involuntary Plea</u>

Osorio argues that he "was duped into pleading," presumably because his trial counsel was ineffective for the reasons addressed above.[3] (DE #113 at 7, 9.) The Court notes that Osorio's guilty plea was entered in open court after full compliance with the requirements of Rule 11 of the Federal Rules of Criminal Procedure. "[V]oluntary responses made by a defendant under oath before an examining judge [are] binding." *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir. 1987). In open court, Osorio acknowledged having received a copy of the indictment, having discussed the charges with his attorney, and being guilty of the offenses to which he was pleading guilty. (DE #120 at 9-10, 37, 43, 45-46.) He repeatedly denied that anyone had made any promise or assurance to him in an effort to induce him to enter a plea of guilty. (*Id.* at 4, 9.) He also denied that anyone threatened or attempted to force him to plead guilty. (*Id.* at 4, 10.) The Court found that

---

[3] Osorio also maintains that he was "duped into a plea-agreement." (DE #113 at 6.) The record reflects that Osorio did not enter into a written plea agreement, but rather, plead guilty in open court.

Osorio was "fully competent and capable of entering an informed plea and that his plea of guilty to the charges contained in Count One and Two of the indictment is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense." (*Id*. at 46.) Osorio's guilty plea was entered voluntarily, knowingly, and intelligently, and therefore, was valid*. See Richmond v. United States*, No. 114CV01436TWPDKL, 2017 WL 2418306, at *2 (S.D. Ind. June 5, 2017) (rejecting contention that plea was involuntary where plea in open court complied with Rule 11). His argument otherwise is meritless.

Motion for Leave to Amend Section 2255 Motion

Osorio, through counsel, moves for leave to amend his Section 2255 motion under Federal Rules of Civil Procedure Rule 15(a)(2), which allows a party to amend its pleading with the court's leave. While Rule 15(a)(2) provides that courts "should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), the decision to grant or deny a motion to amend is discretionary, and "a court may deny the amendment due to undue delay, bad faith, dilatory motive, prejudice or *futility*." *Rodriguez v. United States*, 286 F.3d 972, 980 (7th Cir. 2002) (citation omitted, emphasis added). Osorio's motion seeks to argue that his trial counsel was ineffective in failing to adequately consult with Osorio regarding

the filing of a notice of appeal.  The Government agrees that the roots of this amended argument can be found in Osorio's original Section 2255 motion.  *See* Fed. R. Civ. P. 15(c)(1)(B) ("An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.").  The Government maintains that the amended argument has no substantive merit, and thus, the motion to amend should be denied due to futility.  As such, the Court considers the merits of this argument.

Counsel is obligated to consult with his client regarding "the advantages and disadvantages of taking an appeal" and make a "reasonable effort to discover the defendant's wishes." *Roe v. Flores-Ortega,* 528 U.S. 470, 478 (2000).  If a defendant requests that his counsel file a notice of appeal on his behalf, it is *per se* ineffective assistance of counsel for him to fail to do so. *Dowell v. United States,* 694 F.3d 898, 901 (7th Cir. 2012).  In the absence of direction from the defendant to file an appeal, a court must determine whether his counsel's failure to file a notice of appeal violates the performance and prejudice prongs of *Strickland*.  As to the performance prong, "counsel has a constitutionally imposed duty to consult with the defendant about

an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega,* 528 U.S. at 480. This is a totality-of-the-circumstances test that requires courts to take into account "all the information counsel knew or should have known." *Id.* (citation omitted). A "highly relevant" factor in this inquiry includes whether the case involved a trial or a guilty plea, because "a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.; see Rowe v. United States*, 74 F. Appx. 650, 653 (7th Cir. 2003) (finding "counsel reasonably could have concluded that Rowe's intervening guilty pleas reflected a change-of-heart regarding an appeal").

If the performance prong is satisfied by a failure to consult as required, a court must consider the matter of prejudice. For the claim to be meritorious, "[a] defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Bednarski v. United States,* 481 F.3d 530, 536-37 (7th Cir. 2007) (quoting *Flores-Ortega*, 528 U.S. at 484). This determination "will turn on the facts of a particular case", but

"evidence that there were nonfrivolous grounds for an appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant." *Flores-Ortega*, 528 U.S. at 485. "A defendant's inability to demonstrate potential merit 'will not foreclose the possibility that he can satisfy the prejudice requirement where there are other *substantial reasons* to believe that he would have appealed.'" *Bednarski*, 481 F.3d at 537 (emphasis in original) (quoting *Flores-Ortega*, 528 U.S. at 486).

Here, the Government asserts that the Court adequately advised Osorio of his right to appeal at his sentencing hearing:

> THE COURT: . . . I now advise you you may have a right to appeal your conviction and sentence in this case. And if you wish to file an appeal and are not able to pay the costs of such an appeal, you may apply for leave to appeal *in forma pauperis*, which means that you may be able to pursue an appeal at no cost to you.
>
> Mr. Meczyk, of course, as your retained attorney, he has the authority to do that. If you do not have the funds, then you can apply for leave to appeal *in forma pauperis*.
>
> . . . I suggest very strongly to you that you talk to Mr. Meczyk probably today or tomorrow with regards to whether or not you want to appeal. There's a very small window; and Mr. Meczyk's a good attorney, but if you go beyond that time you will have lost all your rights to an appeal. So make sure you let him know right away.
>
> THE DEFENDANT: Okay. That's fine. Thank you.

(DE #111 at 86-88.) The Government cites *Flores-Ortega* to suggest that the Court notified Osorio of his rights and obligations to appeal even if he had no consultation with counsel, and therefore,

21

Osorio's counsel was effective. *See* 528 U.S. at 479-80 (rejecting a bright-line rule that counsel must always consult with the defendant regarding an appeal, noting that where "a sentencing court's instructions to a defendant about his appeal rights in a particular case are so clear and informative as to substitute for counsel's duty to consult . . . [i]n some cases, counsel might then reasonably decide that he need not repeat that information."). However, the Court's statement to Osorio "did not advise [him] about the pros and cons of appealing, and was thus not sufficiently informative to substitute for the consultation that [trial counsel] had a duty to provide." *Burnett v. United States*, 472 F. App'x 409, 414 (7th Cir. 2012) (citing *Flores-Ortega*, 528 U.S. at 482).

Osorio does not allege that he directed his trial counsel to appeal and counsel refused, or that his wishes were disregarded. Nor does he assert that his trial counsel failed to consult with him at all about filing an appeal. He contends that his counsel failed to adequately consult with him because he failed to inform him of the advantages of appealing or ask if he wanted to appeal. Osorio submits an affidavit stating that he met with his trial counsel immediately after his sentencing hearing, who told him "not to file an appeal because I would get more time added to my sentence. [Counsel] did not ask me whether or not I wanted to

appeal, nor did he discuss possible advantages of filing an appeal. I was simply told not to appeal." (DE #124-2, ¶¶4-5.) Osorio attests that if counsel had asked him if he wanted to appeal, or had he been adequately advised, he would have asked counsel to file an appeal. (*Id.*, ¶6.)

The Government contends that trial counsel adequately consulted with Osorio about the possible effects of an appeal. While Osorio argues that his counsel failed to inform him of the advantages of appealing, the Government maintains that there were none. At his sentencing hearing, Osorio, through his counsel, agreed with the statutory mandatory minimum of 120 months for his crimes, and received that sentence. (DE #111 at 72, 80.) The Government maintains that Osorio could not have received a lesser sentence without a showing that he was eligible for a reduction under the statutory safety valve provisions or a motion showing that he had provided substantial assistance to the government in an investigation or prosecution. Osorio does not argue that either of these situations apply here.[4] Thus, the lowest sentence available to Osorio was 120 months imprisonment. (*See id*. at 73-74 (addressing the Court's inability to go below the mandatory minimum in this case).) Because he was sentenced to the statutory

<hr/>

[4] The Government notes that Osorio preserved three objections in the Presentence Investigation Report, and contends that they would have not have reduced Osorio's sentence. Osorio does not dispute this, or raise any other basis for Osorio receiving a reduced sentence.

mandatory minimum, the only viable outcome of an appeal would be that Osorio would receive the same amount or more time in prison. *See Bednarski*, 481 F.3d at 536 (concluding that a rational defendant would not want to appeal his sentence where petitioner was sentenced "to the bottom of the advisory Guideline imprisonment range for his crimes").

In response, Osorio does not proffer any non-frivolous grounds for appeal, or any other substantial reason to believe that he would have appealed.[5] Osorio argues that he does not need to identify meritorious grounds for appeal to prove prejudice, *i.e.,* that but for trial counsel's deficient performance, he would have appealed. Citing his affidavit, Osorio claims that he reasonably demonstrated to counsel that he was interested in appealing. But his affidavit merely states that he would have asked his counsel to file an appeal if his counsel had asked him if he wanted to appeal, or if Osorio had been adequately advised. (DE #124-2, ¶6.) Nothing in his affidavit indicates that Osorio "reasonably demonstrated *to counsel* that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480 (emphasis added); *see United States v. Florian*, No. 86 CR 850, 2016 WL 4611422, at *4

---

[5] The Court notes that Osorio's unconditional plea of guilty constituted "a waiver of non-jurisdictional defects occurring prior to the plea." *United States v. Adams*, 746 F.3d 734, 739 (7th Cir. 2014) (citation omitted). The Court has found Osorio's jurisdictional and plea issues be meritless for the reasons above, and Osorio does not raise any issues regarding his sentencing.

(N.D. Ill. Sept. 6, 2016) (denying § 2255 petition where petitioner provided "no evidence that indicates that she reasonably demonstrated to her trial counsel that she was interested in appealing"); *Reid v. United States*, No. 14-C-1065, 2014 WL 6682449, at *2 (E.D. Wis. Nov. 25, 2014) (finding no deficient performance where he identified no non-frivolous grounds for appeal of his revocation sentence, and made no claim that he ever expressed an interest in appealing). Osorio's affidavit falls short of establishing that but for his trial counsel's (alleged) ineffective performance, he would have appealed. *See Bednarski,* 481 U.S. at 537 (finding no prejudice where defendant proffered no non-frivolous grounds for appeal and, aside from expressing a desire for a lighter sentence, presented no other reason to conclude that he would have filed a timely appeal but for his attorney's alleged failure to consult with him); *Florian*, 2016 WL 4611422, at *5 (finding no prejudice where petitioner had not alleged any non-frivolous grounds for an appeal or provided evidence of "other substantial reasons" that would lead the court to believe that she would have appealed). Because this argument is lacks merit, an amendment to Osorio's Section 2255 motion would be futile. *See Vitrano v. United States*, 721 F.3d 802, 809 (7th Cir. 2013) (holding district court's denial of leave to amend §

2255 motion was "justified based on the futility of the proposed amendment").

For the reasons set forth above, Osorio's Section 2255 motion and his motion to amend the Section 2255 motion are denied.

## Other Related Motions

Osorio filed several motions related to his Section 2255 motion while he was proceeding *pro se*. Osorio moves to request discovery and to expand the record to include newly discovered evidence. (DE ##115, 116, 117.) These motions also argue that his trial counsel was ineffective for the reasons addressed above. Rule 6(a) of the Rules Governing Section 2255 Proceedings in the United States District Courts ("Rules Governing Section 2255 Proceedings") provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure." Rule 6(b) of the Rules Governing Section 2255 Proceedings states that the "party requesting discovery must provide reasons for the request." Good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (quotation marks omitted). "Good cause, however, cannot exist where the facts alleged do not provide a basis for relief." *Hubanks v.*

*Frank,* 392 F.3d 926, 933 (7th Cir. 2004) (citation omitted).
Moreover, a petitioner's "hope" or "speculation" that there is
evidence hidden in the record which might support his claim "does
not constitute good cause." *Jones v. United States*, 231 Fed.
Appx. 485, 488 (7th Cir. 2007). Here, Osorio's motions do not
explain why the additional discovery is necessary for his Section
2255 motion. As for newly discovered evidence, Osorio attaches
several documents that are Bates labeled "US v Osorio," indicating
that they were produced in connection with Osorio's criminal
proceeding. (*See* DE #117 at 4-41.) The Government notes that it
provided these documents to Osorio's counsel in the weeks following
Osorio's arraignment in 2015. (DE #121 at 26.) Osorio does not
explain how these documents support his Section 2255 claims such
that the record should be expanded. Therefore, these motions are
denied.

Finally, Osorio moves for a hearing pursuant to Rule 8(a) of
the Rules Governing Section 2255 Proceedings. (DE #115.) Not
every Section 2255 petition warrants a hearing. *Boulb v. United
States*, 818 F.3d 334, 339 (7th Cir. 2016). An evidentiary hearing
is not required if the record before the court conclusively shows
that the petitioner is entitled to no relief. *Id.* (citing 28
U.S.C. 2255(b); *see also Kafo v. United States*, 467 F.3d 1063,
1067 (7th Cir. 2006) (to justify a hearing, "the petition must be

accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions"). The record before this Court conclusively reveals that Osorio is not entitled to relief, so no hearing is needed. Moreover, Osorio is now represented by counsel, so his request for appointment of counsel is moot. Therefore, Osorio's motion for a hearing and appointment of counsel (DE #115) is denied.

## Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a defendant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). For the reasons set forth above, Osorio has not stated any grounds for relief under Section 2255. The Court finds no basis for a determination that reasonable

jurists would find this decision debatable or incorrect or that the issues deserve encouragement to proceed further. Therefore, a certificate of appealability will not be issued.

<u>CONCLUSION</u>

For the reasons set forth above, Defendant's motion to vacate under section 2255 (DE #113) is **DENIED**; the motion requesting a hearing and appointment of counsel (DE #115) is **DENIED**; the motion requesting discovery (DE #116) is **DENIED**; and the motion to expand the record (DE #117) is **DENIED**; and the motion to amend the Section 2255 motion (DE #124) is **DENIED.** The Clerk is **ORDERED** to **DISMISS** this case **WITH PREJUDICE**. Further, this Court declines to issue Defendant a certificate of appealability. The Clerk is **ORDERED** to distribute a copy of this order to Vincente Osorio, #13699-027, Ashland FPC Federal Prison Camp, P.O. Box 6000, Ashland, KY 41105, or to such other more current address that may be on file for the defendant.


**DATED:  June 6, 2018**          **/s/ RUDY LOZANO, Judge**
                                  **United States District Court**